UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
BIANCA ABREU,

                Plaintiff,

              - against -

RECEIVABLE COLLECTION SERVICES,
LLC,

                Defendant.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-04103 (PKC) (LB)

PAMELA K. CHEN, United States District Judge:

Plaintiff Bianca Abreu ("Plaintiff" or "Abreu") filed this instant action against Defendant Receivable Collection Services, LLC, alleging abusive, deceptive, and unfair debt collection practices in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* Plaintiff voluntarily dismissed her case after Defendant filed a pre-motion conference letter indicating its intent to file a motion to dismiss. As requested by Defendant, the Court retained jurisdiction so that Defendant could file a motion for fees, costs, and sanctions pursuant to 28 U.S.C. § 1927 and the inherent power of the Court. Pending before the Court is that motion. For the reason stated below, Defendant's motion is deferred for further briefing.

## BACKGROUND

On June 6, 2018, Plaintiff filed her complaint in the Civil Court of the City of New York, County of Queens, alleging that Defendant had violated the FDCPA. (*See* Complaint, Dkt. 1-2, ¶ 1; *see also* Summons, Dkt. 1-3.) Plaintiff alleges that on September 29, 2017, after obtaining her credit report, she noticed an account for $380.00, originating from a medical provider and reported by Defendant. (Complaint, Dkt. 1-2, ¶ 10.) Plaintiff sought assistance from a credit repair company. (*Id.* ¶ 11.) After signing over power of attorney to the credit repair company, a

representative from that company ("Plaintiff's representative") called Defendant.[1] (*Id.* ¶ 12; *see also* Plaintiff's Opposition Brief ("Pl.'s Br."), Dkt. 19, at ECF[2] 2.) Plaintiff's representative informed Defendant that Plaintiff was disputing the account. (Complaint, Dkt. 1-2, ¶ 30.) Defendant responded that it would note the dispute, but that Plaintiff would have to report the dispute to the credit bureaus herself. (*Id.* ¶¶ 32–37.) Plaintiff's representative then ended the call. (*Id.* ¶ 38.) Later that day, Defendant called Plaintiff's representative back and stated, contrary to what it had stated previously, that Defendant would be reporting the dispute directly to the credit bureaus itself. (*Id.* ¶ 40.) Plaintiff alleges that Defendant's initial statement, that it would not report the dispute to the credit bureaus, was a violation of § 1692e(8) of the FDCPA. (Pl.'s Br., Dkt. 19, at ECF 3.)

After Plaintiff filed her complaint in state court, Defendant sent Plaintiff a letter indicating that it saw Plaintiff's complaint to be "without merit and . . . otherwise frivolous" and advised Plaintiff that she needed to withdraw the complaint with prejudice within 24 hours. (Exhibit 1 to Affirmation in Support, Dkt. 16-1.) Plaintiff refused to do so. (Affirmation in Support, Dkt. 16, ¶ 4.) Defendant then removed the complaint to federal court on July 18, 2018 (*see* Dkt. 1), and filed a pre-motion conference letter on July 22, 2018, indicating that Defendant intended to file a motion to dismiss Plaintiff's complaint (*see* Dkt. 4). Plaintiff then voluntarily dismissed her claim on August 2, 2018. (Dkt. 5.) On the same day, Defendant asked that the Court, despite the voluntary dismissal, retain jurisdiction so that Defendant could file a motion for sanctions pursuant

---

[1] The parties appear to dispute whether Plaintiff's representative initiated the call to Defendant, or whether Plaintiff's representative was returning a call that Defendant had made to Plaintiff or Plaintiff's representative. (*See* Pl.'s Br., Dkt. 19, at ECF 6.) This fact is not relevant to the Court's resolution of this sanctions motion.

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

to 28 U.S.C. § 1927 and the inherent power of the Court. (Dkt. 6.) On September 6, 2018, the Court So Ordered Plaintiff's voluntary dismissal, but retained jurisdiction for purposes of the instant motion. (Sept. 6, 2018 Docket Entry.) The motion was fully briefed on October 26, 2019. (Dkts. 13–19.)

## LEGAL STANDARD

### I. 28 U.S.C. § 1927

Under 28 U.S.C. § 1927, any attorney in federal court "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "This statute 'imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics,' and provides courts with a cudgel to use, in their discretion, 'to deter unnecessary delays in litigation.'" *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 55 (2d Cir. 2018) (quoting *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991)). "To impose sanctions under [§ 1927], a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay." *Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018) (internal quotations and citation omitted).

"[T]he Second Circuit demands 'a high degree of specificity in the factual findings' of the district court." *Scrilla Hill Entm't Inc. v. Dupree*, No. 16-CV-490 (JMF), 2016 WL 5817064, at *4 (S.D.N.Y. Oct. 5, 2016) (quoting *Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir. 1986)). "Courts in this [C]ircuit construe the statute 'narrowly and with great caution, so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the

law.'" *Romeo v. Sherry*, 308 F. Supp. 2d 128, 148 (E.D.N.Y. 2004) (quoting *Mone v. C.I.R.*, 774 F.2d 570, 574 (2d Cir. 1985)).

## II. Court's Inherent Power

"[A] federal court . . . may exercise its inherent power to sanction a party or an attorney who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)). "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (internal quotations and citation omitted). "In order to impose sanctions pursuant to its inherent power, a district court must find that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay." *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012) (internal quotations and citation omitted). Therefore, "[i]n practice, 'the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power" is that "'awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both.'" *Id.* at 143–44 (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)); *see also Gissendaner v. Credit Corp Sols., Inc.*, No. 6:18-CV-06313-EAW, 2019 WL 609559, at *7 (W.D.N.Y. Feb. 13, 2019) ("[R]equests for sanctions under Section 1927 and pursuant to the court's inherent authority may be decided in a single inquiry.") (internal quotations and citation omitted).

**DISCUSSION**

Defendant argues that both Plaintiff and Plaintiff's counsel[3] should be sanctioned for bringing an action alleging an FDCPA violation based on a theory—the FDCPA should apply to communications by debt collectors to third parties—that courts in this Circuit have previously rejected. Though Plaintiff's counsel may be sanctioned under either § 1927 or the Court's inherent power, Plaintiff may only be sanctioned under the Court's inherent power. *See Enmon*, 675 F.3d at 143–44. However, under either provision, the Court must find that Plaintiff and/or Plaintiff's counsel both acted in bad faith and brought a claim without a colorable basis. *See, e.g., id.* at 143.

Generally, bad faith must be proven with specific factual findings. *See, e.g., Eisemann v. Greene*, 204 F.3d 393, 396–97 (2d Cir. 2000). It can also be inferred, but "'only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" *Enmon*, 675 F.3d at 143 (quoting *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999)). "[G]eneral inferences of bad faith are disfavored by courts in this Circuit." *Gissendaner*, 2019 WL 609559, at *7 (citing *Eisemann*, 204 F.3d at 397). Bad faith is a subjective standard. *See Pentagen Techs. Int'l Ltd. v. United States*, 172 F. Supp. 2d 464, 473–74 (S.D.N.Y. 2001).

**I.    Plaintiff Abreu**

The Court first addresses whether Plaintiff Abreu acted in bad faith. "The rule that the sins of the lawyer are visited on the client does not apply in the context of sanctions, [therefore] this [C]ourt must consider whether any conduct on the part of plaintiff [herself] warrants sanctions."

---

[3] Defendant is also seeking sanctions against "Mr. Rephen[,]" the named partner of Plaintiff's counsel's law firm, M. Harvey Rephen & Associates, P.C. Given that Mr. Rephen did not enter a notice of appearance in the instant case, the Court infers that Defendant is asking that the Court also sanction Plaintiff's counsel's firm. *See Huebner*, 897 F.3d at 55 n.8 (noting that "[a] court may sanction a law firm under § 1927 for the acts of its attorneys").

*Martin v. Giordano*, 185 F. Supp. 3d 339, 355 (E.D.N.Y. 2016) (internal quotations and citation omitted). "A defendant must provide evidence of plaintiff's bad faith (as opposed to counsel's bad faith)." *Mellon v. Monarch Recovery Mgmt., Inc.*, No. 17-CV-2695 (ADS) (ARL), 2017 WL 4776738, at *3 (E.D.N.Y. Oct. 17, 2017) (internal quotations, brackets, and citation omitted). Here, Defendant argues that Plaintiff meets this high threshold because she, along with her counsel, engaged "in abusive litigation practices [such as] intentionally instructing the Plaintiff's credit counseling company to contact the Defendant via telephone, tape recording the telephone call, engaging the Defendant's debt collector in a telephone conversation and pepper[ing] the Defendant's collector with baseless questions solely in an attempt to create alleged FDCPA violations." (Defendant's Memorandum of Law in Support ("Def.'s Br."), Dkt. 18, at 11.) However, Defendant provides no evidence that Plaintiff directed the actions of her representative, such as to record the call, or that Plaintiff knew that the purpose of the call was to "create alleged FDCPA violations." Without significantly more evidence that reveals Plaintiff's involvement in the call at issue, the Court is unable to conclude that Plaintiff had the necessary subjective "bad faith" to be sanctioned under the Court's inherent power.[4] *Cf. Timoshenko v. Mullooly, Jeffrey, Rooney & Flynn, LLP*, No. 17-CV-4472 (ILG), 2018 WL 1582220, at *4 (E.D.N.Y. Mar. 30, 2018)

---

[4] Defendant also argues that "[t]he frivolousness of Plaintiff's claim is further demonstrated by the fact that, under the Fair Credit Reporting Act (FCRA), a consumer has an independent right to dispute an alleged debt placed in her credit report." (Def.'s Br., Dkt. 18, at 11.) To the extent Defendant relies on this argument to highlight Plaintiff's alleged bad faith, Defendant provides no evidence to demonstrate that Plaintiff was aware of this right, much less how that (assumed) knowledge shows her intent to bring this claim in bad faith. Defendant's argument also fails to demonstrate whether Plaintiff's claim is colorable, as it provides no caselaw to show how a right under the FCRA would affect Plaintiff's claim under the FDCPA.

(finding no evidence of bad faith on plaintiff's behalf because, *inter alia*, the evidence "provide[d] no insight into Plaintiff's intentions").[5]

## II. Plaintiff's Counsel

The question of Plaintiff's counsel's bad faith is not as easily addressed. The Court is confounded by the actions of Plaintiff's counsel. As discussed further *infra*, Plaintiff's counsel purports to advance a novel legal claim in this case, based on the Seventh Circuit's decision in *Evory v. RJM Acquisitions Funding, LLC*, 505 F.3d 769 (7th Cir. 2007), that he believes could be adopted by the Second Circuit. (*See* Plaintiff's August 16, 2018 Letter, Dkt. 9, at ECF 2 ("it is not unreasonable to believe that the Second Circuit may decide at some point that it should recognize *Evory* as good law")). This *Evory*-based claim, however, has already been rejected by several district courts in the Second Circuit. *See Sandoval v. I.C. Sys.*, No. 17-CV-3755 (DLI) (ST), 2018 WL 1582218 (E.D.N.Y Mar. 29, 2018); *Vernot v. Pinnacle Credit Servs., LLC*, No. 16-CV-3163 (JFB) (SIL), 2017 WL 384327 (E.D.N.Y. Jan. 26, 2017); *Williams v. Harris, Klein Assocs., Inc.*, No. 17-CV-3473 (FB) (JO), 2018 WL 5268113, at *2 (E.D.N.Y. Oct. 23, 2018). In fact, Plaintiff's counsel is aware of this, since he was the counsel of record for all three cases, *Sandoval*, *Vernot*, and *Williams*.

---

[5] The bad faith determinations in *Timoshenko* and *Mellon* were made pursuant to FDCPA § 1692k(a)(3) which provides that "on a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." 15 U.S.C. § 1692k(a)(3). The Supreme Court, in *Marx v. General Revenue Corp.*, 568 U.S. 371 (2013) noted that "§ 1692k(a)(3) codifies the background rule for attorney's fees," which allows courts to award fees based on a litigant's bad faith. *Id.* at 382 (also noting that "a court has inherent power to award fees based on a litigant's bad faith even without § 1692k(a)(3)"). Therefore, the Court finds that the reasoning in *Timoshenko* and *Mellon* as to a party's bad faith is equally applicable in the instant context. *Cf. Huebner v. Midland Credit Mgmt., Inc.*, No. 14-CV-6046 (BMC), 2016 WL 6652722, at *5 (E.D.N.Y. Nov. 10, 2016), *aff'd*, 897 F.3d 42 (2d Cir. 2018) (holding, based on the same set of facts, that a party could be sanctioned under both the court's inherent power and § 1692k(a)(3)).

An attorney is protected from sanctions if he "makes a reasonable argument for the extension, modification, or reversal of [contrary] decisions." *Knipe v. Skinner*, 146 F.R.D. 58, 61 (N.D.N.Y. 1993). However, that attorney must be frank about the current status of his legal claims and pursue those novel claims in a logical fashion. It is not clear that Plaintiff's counsel is doing so. For example, in *Williams v. Harris, Klein Associates, Inc.*, the Honorable Frederic Block noted that "the Court is troubled by the fact that [Plaintiff's counsel], who represented the plaintiff in both *Sandoval* and *Vernot*, and who represents [plaintiff] here, did not even acknowledge, much less address, the recent holdings that squarely preclude his client's claims." 2018 WL 5268113, at *2. In the instant action, though Plaintiff's counsel acknowledges that he needs the Second Circuit to adopt his novel claim, he filed this action in state court, which meant that unless Defendant removed the case, as happened here, there would be no opportunity for the Second Circuit to consider Plaintiff's claim.

Furthermore, while the Court notes that it should not discourage voluntary dismissals, *see Enmon*, 675 F.3d at 146 ("By the same token, we . . . do not want to discourage voluntary dismissals, which save the time not only of appellees but also of this court, by a readiness to grant sanctions.") (internal quotations and citation omitted), the Court is perplexed as to why Plaintiff's counsel would voluntarily dismiss this case when, in order to get the Second Circuit to adopt his argument, he would need to prosecute the case to a final judgment. Likewise, it does not appear that Plaintiff's counsel has attempted to appeal the unfavorable decisions in *Sandoval*, *Vernot*, or *Williams*. These actions do not evince the good faith intention to persuade the Second Circuit to adopt a claim that it has indicated it would likely reject. *See Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (noting "grave reservations" as to whether the FDCPA applied to misrepresentations to third parties). Plaintiff's counsel's representations that he filed this claim in

8

good faith, when his actions speak otherwise, lead the Court to suspect that Plaintiff's counsel might be motivated to bring these lawsuits for other reasons, such as obtaining a nuisance-value settlement from Defendant. *Cf. Timoshenko*, 2018 WL 1582220, at *5 (characterizing litigation as a "shakedown" where the defendant "likely could have settled this case for significantly less than the legal expenses it has incurred in filing its answer and motion, and no doubt [plaintiff's counsel] knew as much when he decided to defend an indefensible position").

The Court can also make a finding of bad faith based on an inference that Plaintiff's counsel's "actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Enmon*, 675 F.3d at 143 (internal quotations and citation omitted). Defendant argues for such an inference:

> Section 1927 sanctions are authorized herein as the filing of the baseless lawsuit against the herein Defendant . . . [was] completely without merit as to require the conclusion that the acts of [Plaintiff's counsel] must have been undertaken for the improper purpose of attempting to force the Defendant RCS to 'cry uncle' and simply tender a costs[-]of[-]defense monetary settlement. This wrongful conduct constitutes bad faith.

(Def.'s Br., Dkt. 18, at 8–9.) A finding that Plaintiff's counsel's actions were "so completely without merit" would necessarily overlap with a finding that a claim is not colorable, which the Court must also find in order to impose sanctions. The Court therefore proceeds to its analysis of whether Plaintiff's FDCPA claim is colorable.

"[A] claim is 'entirely without color when it lacks any legal or factual basis. Conversely, a claim is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim.'" *Enmon*, 675 F.3d at 143 (quoting *Schlaifer Nance*, 194 F.3d at 337). Defendant argues that Plaintiff's claim is not colorable because Plaintiff's reliance on *Evory v. RJM Acquisitions Funding, LLC*, 505 F.3d 769 (7th Cir. 2007), an out-of-circuit decision, has been rejected by various district courts within the Second Circuit.

9

(Defendant's Reply Brief., Dkt. 17, at 3.) In *Evory,* the Seventh Circuit held that communications by debt collectors to a consumer's lawyer, rather than the consumer himself, could still lead to liability under the FDCPA. *See Evory*, 505 F.3d at 744–45. Defendant is correct that this expansion of the FDCPA to third parties, such as a consumer's lawyer, has been rejected by several district courts in this Circuit. *See, e.g.*, *Sandoval*, 2018 WL 1582218; *Vernot*, 2017 WL 384327; *see also Kropelnicki*, 290 F.3d at 127 (noting "grave reservations" as to whether the FDCPA applied to misrepresentations to third parties). However, the Second Circuit has not squarely addressed the issue, *see Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 97 n.6 (2d Cir. 2015) ("[The Second Circuit] has not ruled on whether an FDCPA claim may be brought for misrepresentations made to third parties."), and district courts are, of course, not bound by the decisions of other district courts, *see J & J Sports Prod., Inc. v. Leon*, No. 18-CV-2103 (PKC) (RML), 2019 WL 1320277, at *6 (E.D.N.Y. Mar. 22, 2019) (noting that the district court is "not bound by the decisions of any other district court in the nation, nor by the decisions of any circuit court other than the Second") (internal quotations and citation omitted). "[C]ourts generally decline to impose sanctions where the purported sanctionable conduct boils down to the advancement of a novel legal theory." *Gissendaner*, 2019 WL 609559, at *7. Therefore, if Plaintiff's claim was solely an attempt to persuade the Second Circuit to adopt the Seventh Circuit's holding in *Evory*, the Court would not have an adequate basis on which to issue sanctions.

However, Plaintiff's claim includes both a procedural and a substantive component. The procedural component, *i.e.*, whether the FDCPA applies to communications by debt collectors to third parties, is colorable given the deference courts should give attorneys advancing novel legal theories. However, the Court has severe reservations as to whether the substantive component of Plaintiff's FDCPA claim, *i.e.*, that Defendant violated the FDCPA when it mistakenly told

Plaintiff's representative that it would not report that Plaintiff disputed the debt directly to the credit bureaus, has any merit. To the extent that the substantive portion of Plaintiff's claim is without merit, the issue of whether Plaintiff's procedural argument—which relies on *Evory* and was the focus of the parties' briefing—has merit becomes significantly less relevant to the Court's ultimate determination as to whether Plaintiff's counsel should be sanctioned.

Though Plaintiff's complaint alleges that Defendant violated numerous provisions of the FDCPA (*see* Complaint, Dkt. 1-2, ¶¶ 43–48 (citing to FDCPA §§ 1692e, 1692e(8), 1692f)), Plaintiff's briefing for the instant motion states that Defendant only violated § 1692e(8) of the FDCPA, which prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). Plaintiff alleges that Defendant violated this provision when it told Plaintiff's representative that it would not advise the credit bureaus that Plaintiff disputed the debt. (Pl.'s Br., Dkt. 19, at ECF 3.) Several courts within the Second Circuit have found that this FDCPA provision does not create an affirmative obligation on debt collectors to update credit bureaus on the status of a consumer's debt, but merely requires that if debt collectors choose to discuss a consumer's debt with a third party, they must inform that third party of the disputed nature of the debt. *See, e.g.*, *Rogers v. Overton, Russell, Doerr & Donovan, LLP*, No. 16-CV-00784 (MAD) (CFH), 2017 WL 570811, at *3 (N.D.N.Y. Feb. 13, 2017) (noting that the "overwhelming weight of persuasive authority" did not find that § 1692e(8) imposed an affirmative duty on debt collectors); *see also Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 285 (2d Cir. 2013) (finding the reasoning of a Ninth Circuit decision persuasive, which included an interpretation of § 1692e(8) that "once a debt has been disputed, a debt collector cannot communicate the debtor consumer's credit information to others

without disclosing the dispute"). Plaintiff's counsel must be aware of this caselaw since he was the attorney of record in one of the relevant cases. *See Vernot*, 2017 WL 384327, at *1 n.2 ("Plaintiff does not cite any law that obligates defendant to inform credit bureaus that a consumer is disputing a debt that was reported before the consumer disputed it, and neither Section 1692e nor Section 1692f imposes such a burden.").

Furthermore, even assuming *arguendo*, that such an affirmative duty exists, Plaintiff's complaint makes it clear that Defendant would notify the credit bureaus of the dispute, despite its initial comment to the contrary, and that Defendant even called Plaintiff back to clarify that its original statement about Defendant not contacting the credit bureaus was mistaken. (Complaint, Dkt. 1-2, ¶ 40.) Given Defendant's behavior, the Court finds it very likely that Defendant would not be liable under the FDCPA, under either the bona fide error defense, *see, e.g.*, *Lee v. Kucker & Bruh, LLP*, 958 F. Supp. 2d 524, 529 (S.D.N.Y. 2013) (describing the availability of an affirmative defense when a debt collector makes a "bona fide error" as defined by 15 U.S.C. § 1692k(c)), or the implied requirement of materiality, *see Scaturro v. Northland Grp., Inc.*, No. 16-CV-1314 (SJF) (GRB), 2017 WL 415900, at *3 (E.D.N.Y. Jan. 9, 2017) ("'several other circuits, as well as a number of district courts in this Circuit, read a materiality requirement into the FDCPA's prohibition of false, deceptive, or misleading practices in the collection of a debt'") (quoting *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x. 89, 94 (2d Cir. 2012) (summary order)). As a result, it appears that Plaintiff's claim is meritless, even if Plaintiff's novel procedural theory was adopted.

If Plaintiff's FDCPA claim is not colorable, and therefore so without merit as to warrant the inference that it was brought in bad faith, the Court would have grounds to issue sanctions against Plaintiff's counsel. However, since "[a]n attorney facing sanctions must receive specific

notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter," *Martin*, 185 F. Supp. 3d at 367, and given that the parties have thus far focused their briefing on Plaintiff's *Evory* claim, the Court will defer ruling on Defendant's sanctions motion to give Plaintiff's counsel an additional opportunity to respond to the concerns raised by the Court concerning Plaintiff's substantive § 1692e(8) claim.

Accordingly, as ordered below, Plaintiff's counsel will show cause why he should not be sanctioned for violating Federal Rule of Civil Procedure 11(b)(2)[6] or under the Court's inherent power[7] for the reasons stated herein. Defendant is welcome, though not required, to respond to the Court's show cause order, but no legal expense incurred in briefing this issue will be included in any eventual award.

## CONCLUSION

For the reasons discussed above, Defendant's motion for sanctions pursuant to § 1927 and the Court's inherent power is deferred. Plaintiff's counsel is hereby ordered to show cause within fourteen (14) days of the issuance of this Order why he should not be sanctioned for bringing a

---

[6] Because the Court is issuing this show cause order after Plaintiff has voluntarily dismissed her case, the Court may not impose monetary sanctions under Rule 11. Fed. R. Civ. P. 11(c)(5); (*see* Dkt. 5; 9/6/2018 Docket Entry). However, the Court can still issue *non*-monetary sanctions under Rule 11, as well as monetary sanctions pursuant to its inherent power. *See Steeger v. JMS Cleaning Servs., LLC*, No. 17-CV-8013 (DLC), 2018 WL 1363497, at *3 (S.D.N.Y. Mar. 15, 2018) (issuing non-monetary sanction under Fed. R. Civ. P. 11 after parties settled claims and monetary sanction under court's inherent power); *cf. Blauinsel Stiftung v. Sumitomo Corp.*, 88 F. App'x 443, 445 (2d Cir. 2004) (summary order) (affirming district court's imposition of sanctions under its inherent authority after party voluntarily dismissed case).

[7] Though courts can generally issue Rule 11 sanctions upon a finding of objective unreasonableness, in *Muhammad v. Walmart Stores East, L.P.*, the Second Circuit held that a court should only issue Rule 11 sanctions *sua sponte* upon a finding of subjective bad faith. 732 F.3d 104, 108 (2d Cir. 2013). This is the same standard as is required to issue sanctions pursuant to the Court's inherent power.

meritless claim, as described above, pursuant to the Court's inherent authority and/or Fed. R. Civ. P. 11(b)(2).

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: April 26, 2019
      Brooklyn, New York